IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS G. PALMER, : | |
| Plaintiff : | Civil Action No. 1:09-cv-01883 |
| : | (Chief Judge Kane) |
| v. : | |
| : | |
| HARVEY GERSTMAN : | |
| ASSOCIATES, INC., QUEST SERVICE : | |
| GROUP, LLC, and HGA QUEST, INC., : | |
| Defendants : | |

**MEMORANDUM**

Presently pending before the Court is Defendants' motion for summary judgment. (Doc. No. 48.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion.

**I.     BACKGROUND**

Plaintiff Thomas G. Palmer began working as a service representative for Defendant Harvey Gerstman Associates, Inc. ("HGA") on December 31, 1999. (Doc. No. 50 ¶ 1.) He was promoted to the position of District Manager for the northern Pennsylvania territory on January 1, 2005. (Id. ¶ 3.) In that position, Plaintiff was responsible for supervising service representatives and ensuring that projects were properly completed. (Id. ¶ 4.)

In 2007 and 2008, HGA employees received performance evaluations on a semi-annual basis, with the review period running from the date that the last evaluation was issued. (Id. ¶¶ 5-6.) Total performance evaluation scores were calculated by applying a weighting system, with some evaluation categories valued higher than others. (Id. ¶ 9.) The categories, and the values assigned to them, would often be revised from one review period to the next. (Id. ¶¶ 10-11.)

Regional Vice President Jerry Ashmen began supervising Plaintiff in September 2007.

(Id. ¶ 13.) He issued his first performance evaluation of Plaintiff's work on November 15, 2007. (Id.) In that evaluation, Mr. Ashmen rated Plaintiff a 2 (out of 5) in two categories: ensuring "set integrity" and effective email communication. (Id. ¶ 15.) Plaintiff's total evaluation score was a 3.51, which was rounded up to a 4, a score that Plaintiff felt was fair. (Id. ¶¶ 17, 20.)

On February 28, 2008, Plaintiff underwent quadruple bypass surgery. (Id. ¶ 29.) Because of this surgery, Plaintiff requested leave time under the Family and Medical Leave Act ("FMLA"). (Id. ¶¶ 31-32.) HGA approved Plaintiff's request, effective February 25, 2008. (Id. ¶ 32.) About two months later, HGA received a note from Plaintiff's physician, stating that Plaintiff could return to work on May 12, 2008, but that he should only work six hours per day for four weeks. (Id. ¶ 34.) Plaintiff returned to work on May 12, 2008, and, other than his six-hour workday restriction, he had no physical limitations; in fact, Plaintiff often worked more hours than his physician advised because he felt "good." (Id. ¶¶ 37-39.) Plaintiff did not have discussions with Mr. Ashmen or other co-workers regarding his health and never requested additional leave time. (Id. ¶¶ 38, 42, 43.)

Mr. Ashmen issued a second performance evaluation of Plaintiff's work on June 20, 2008. (Id. ¶ 21.) The review period for this evaluation began after Plaintiff's November 15, 2007 evaluation was issued. (Id. ¶ 60.) The June 20, 2008 evaluation included an "Audit Score" category, which measured, "among other things, the employees' completion of certain projects that needed to be executed on a timely basis for customers and the amount of time that the employees were working." (Id. ¶ 52.) The Audit Score accounted for twenty-five percent of the total evaluation score, while the remaining seventy-five percent of the score was based on calculating the scores of twenty categories. (Id. ¶ 53.) To calculate the Audit Score for

Plaintiff's evaluation, Mr. Ashmen conducted an audit of two stores within Plaintiff's territory by the end of May 2008.  (Id. ¶ 45.)  Mr. Ashmen also rated Plaintiff a 2 in the same two categories as he did in the November 15, 2007 evaluation; however, those categories were assigned greater values for the June 20, 2008 evaluation.  (Id. ¶¶ 21, 23.)

Plaintiff discussed his June 20, 2008 evaluation with Mr. Ashmen and Larry Kaminsky, the Director of Human Resources.  (Id. ¶¶ 54-55.)  According to Defendants, Plaintiff felt that his evaluation was unfair because Mr. Ashmen conducted the audit of Plaintiff's stores shortly after Plaintiff returned from FMLA leave.  (Id. ¶ 55.)  According to Plaintiff, the Audit Score was never included on the copy of the evaluation that he received.  (Doc. No. 55 ¶ 55.)  Ultimately, Plaintiff's Audit Score was not factored into his overall performance evaluation score.  (Id. ¶¶ 55-56; Doc. No. 50 at 55-56.)  On August 4, 2008, Plaintiff emailed Mr. Ashmen and Mr. Kaminsky, expressing his disagreement with the scores he received in the June 20, 2008 evaluation.  (Doc. No. 50 ¶ 57.)  Plaintiff's total evaluation score was a 3.44, which was rounded down to a 3.  (Id. ¶ 26.)

In August 2008, Regional Vice Presidents and District Managers were informed that HGA had lost a significant contract.  (Doc. No. 50 ¶ 73.)  As a result, on September 26, 2008, about twenty-nine District Managers, including Plaintiff, were either demoted or laid off.  (Id. ¶ 70.)  According to Defendants, Senior Vice President Brian Blair and Chief Operating Officer Matilde Tysz made all employment decisions.  (Id. ¶ 75.)  Decisions regarding demotion and lay offs were made by using a four-step process.[1]  The first step was to consider which District

---

[1] While Plaintiff does not dispute that these were the "official" steps HGA was to follow, Plaintiff asserts that they were not "consistently applied in a non-discriminatory manner" to him. (Doc. No. 55 ¶¶ 77-85.)

3

Managers were eligible to oversee the reduced number of newly drawn geographic territories. (Id. ¶¶ 77, 83.) If two or more District Managers were eligible to oversee the same territory, the second step in the process was to demote or lay off the District Manager with the lowest overall score on his or her last performance evaluation. (Id. ¶ 83.) If two or more District Managers had the same score on their last evaluations, the District Manager who earned the higher salary would be demoted. (Id. ¶ 84.) Finally, if two or more District Managers earned the same salary, the District Manager with shorter tenure would be demoted or laid off. (Id. ¶ 85.)

According to Defendants, in considering whether to demote or lay off Plaintiff, it was first determined that both Plaintiff and Brent Carpenter were eligible to oversee a newly drawn Pennsylvania territory. (Id. ¶ 89.) Plaintiff was selected for demotion because he had an overall score of 3 on his last performance evaluation, while Mr. Carpenter had an overall score of 4. (Id. ¶ 91.) At this time, Plaintiff was approximately sixty-two years old, and Mr. Carpenter was approximately thirty-six years old. (Id. ¶¶ 2, 87.) While Plaintiff never complained to anyone at HGA that he felt he was being treated unfairly because of his age, he testified that Mr. Ashmen seemed to talk and joke around more with the younger District Managers. (Id. ¶¶ 112-13.)

Following Plaintiff's demotion in September 2008, Plaintiff worked as a service representative until he was laid off on October 23, 2009. (Id. ¶¶ 104-05, 109.) Plaintiff was one of about 500 employees who was laid off at that time. (Id. ¶ 107.)

In October 2008, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission. (Id. ¶ 117.) Plaintiff filed the complaint in this action on September 30, 2009, alleging that Defendants violated Title VII of the Civil Rights Act, the Americans with

Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the Age in Discrimination Employment Act ("ADEA"), and the FMLA. (Doc. No. 1.) On July 11, 2011, Defendants filed a motion for summary judgment (Doc. No. 48), and a brief in support (Doc. No. 49). They filed a statement of facts on July 12, 2011. (Doc. No. 50.) Plaintiff filed a brief in opposition and a statement of facts on August 4, 2011. (Doc. Nos. 55, 56.) Defendants filed a reply brief on August 18, 2011. (Doc. No. 58.)

## II.     STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### III. DISCUSSION

Plaintiff has asserted claims under the ADEA, ADA, and FMLA.[2] Defendants have moved for summary judgment as to all claims. (Doc. No. 48.) The Court will address each claim for relief in turn.

**A. ADEA Claim**

Plaintiff alleges that he was improperly demoted and terminated from his position based upon his age in violation of the ADEA. (Doc. No. 1 ¶ 43.) Defendants moved for summary judgment on this claim, arguing that there is no evidence of age discrimination. (Doc. No. 48.) Plaintiff did not respond to Defendants' arguments in his brief in opposition. (Doc. No. 56.)

---

[2] Plaintiff also alleged that Defendants violated Title VII of the Civil Rights Act and the Rehabilitation Act of 1973. (Doc. No. 1 ¶ 32.) Defendants, however, have not moved for summary judgment on these claims.

The Court finds that Plaintiff does not oppose Defendant's motion with respect to his ADEA claim and, therefore, will grant Defendants' motion as to this claim. See M.D. Pa. L.R. 7.6 (explaining that a party will be deemed not to oppose a motion if he does not file an opposition brief).

Even on the merits, Plaintiff has not satisfied his burden of production as to his ADEA claim. "The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age." Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001) (citing 29 U.S.C. § 623(a)(1)). In Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2350 (2009), the United States Supreme Court addressed a plaintiff's burden of persuasion at trial on a mixed-motive age discrimination claim, holding that the Price Waterhouse burden-shifting framework is not available to the plaintiff and that the "plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Id. at 2350-51. Following Gross, the United States Court of Appeals for the Third Circuit held that, without additional guidance from the Supreme Court, courts within the circuit will continue to apply the McDonnell Douglas framework. See Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009). Thus, the McDonnell Douglas burden-shifting framework applies to the claims in this case.

A plaintiff may establish age discrimination by direct or indirect evidence, and the burdens of establishing and defending claims by indirect evidence are determined by the McDonnell Douglas framework. Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). As the Third Circuit has stated:

> When evaluating ADEA discrimination claims based on indirect evidence, a plaintiff may establish a prima facie case of age discrimination under the ADEA by

7

>   demonstrating that she: (1) was a member of a protected class, i.e., that she was over forty; (2) is qualified for the position; (3) suffered an adverse employment decision, (4) and was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination. To survive a motion for summary judgment, the evidence must be sufficient to convince a reasonable factfinder to find all the elements of the prima facie case.

Duffy, 265 F.3d at 167 (citations, footnotes, and interior alterations omitted).

If a plaintiff establishes a prima facie case, "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision." Stanziale, 200 F.3d at 105 (citations and alterations omitted). The defendant need not prove that the asserted nondiscriminatory reason actually motivated the adverse employment decision. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). "If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. The Third Circuit has explained what a plaintiff must show in order to discredit an employer's proffered legitimate, non-discriminatory reason for taking an adverse employment action:

>   [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.

Id. at 765 (internal brackets, citations, and quotation marks omitted) (emphasis in original).

The Court finds facts sufficient to establish a prima facie case for age discrimination: Plaintiff was over forty years old at the times he was demoted and terminated from his position; no evidence of record indicates that he was not qualified for the position; he suffered adverse employment actions; and Mr. Carpenter, who was chosen for the District Manager position, was sufficiently younger than he.

Since Plaintiff establishes a prima facie case of age discrimination, the Court considers whether Defendants have advanced a legitimate, nondiscriminatory reason for Plaintiff's demotion and termination. Defendants have submitted evidence showing that Plaintiff's demotion in September 2008 was due to a need to reduce the number of its District Managers, as it had recently lost a significant contract and needed to reduce and redraw its geographic territories. Further, Defendants submitted evidence that Mr. Blair and Ms. Tysz used a four-step process in selecting which employees were retained, demoted, or laid off. Although Plaintiff argues that the four-step process was applied in a discriminatory manner, he has pointed to no evidence showing that the decision to demote him was motivated by age. Rather, Defendants have pointed to evidence showing that the decision to retain Mr. Carpenter as a District Manager was based on the fact that he received a higher score on the June 20, 2008 performance evaluation score than Plaintiff did. In addition, Defendants have submitted evidence showing that Plaintiff's termination in October 2009 was due to a company-wide reduction in force. Accordingly, the Court finds that Defendants have presented evidence that supports the conclusion that there were nondiscriminatory reasons for the challenged employment decisions.

As discussed above, to defeat a motion for summary judgment, a plaintiff must either discredit the employer's proffered reasons or present evidence that discrimination was more

likely than not a motivating or determinative cause for the employer's challenged action. Plaintiff has failed to raise a material issue of fact on either ground. In fact, the only evidence in the record possibly connected to a claim of age discrimination is that Plaintiff testified that Mr. Ashmen "treated the people younger than [him, including Mr. Carpenter and other District Managers] a lot different. He'd talk to them and joke around, and he never joked around with me." (Doc. No. 48-4 at 18, 21.) Plaintiff, however, cannot point to evidence that Mr. Blair and Ms. Tysz considered Plaintiff's age when making the decisions to demote and then terminate him, or that Mr. Ashmen considered Plaintiff's age when he conducted Plaintiff's performance evaluations. Therefore, Plaintiff – even if he had opposed Defendants' motion on this claim – would have failed to satisfy his burden of production under the McDonnell Douglas analysis. Accordingly, the Court will grant Defendants' motion with respect to this claim.

        B.    ADA Claim

Next, Defendants have moved for summary judgment as to Plaintiff's ADA claim. (Doc. No. 48.) To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that he has a disability within the meaning of the ADA; (2) that he is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) that he suffered an adverse employment action because of his disability. Turner v. Hershey Chocolate U.S.A., 440 F.3d 604, 611 (3d Cir. 2006). The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Whether an employee meets the ADA's definition of a qualified individual with a disability is to be determined as of the time the

employment decision was made. Turner, 440 F.3d at 611.

Plaintiff asserts that he was both "disabled" and "regarded as disabled." (Doc. No. 56 at 6 & n.3.) Based on the arguments made in both Plaintiff's and Defendants' briefs, the Court interprets Plaintiff's contention that he was disabled as referring to the definition of disability in § 12102(1)(A) – that is, that he had a physical impairment substantially limiting one or more major life activities. Defendants argue that Plaintiff has failed to set forth any facts supporting either contention. (Doc Nos. 49 at 11-13, 58 at 4-5.)

*1. Physical Impairment*

After carefully reviewing the evidence, the Court first finds that Plaintiff has failed to establish that he had a physical impairment substantially limiting one or more of his major life activities. Plaintiff's description of his alleged impairment is so general that it is impossible for the Court to conclude that any of Plaintiff's major life activities were limited upon his return to work. Plaintiff simply asserts that he was "'disabled' and had a 'serious health condition' as verified by his treating cardiologist and as confirmed by HGA's approval of his FMLA leave from February 25, 2008 to May 12, 2008." (Doc. No. 56 at 6.) However, "[t]o be 'disabled' under the ADA requires more than simply a diagnosed impairment. Rather, a person must have 'a physical or mental impairment that substantially limits one or more major life activities . . . .'" Bialko v. Quaker Oats Co., No. 10-2273, 2011 WL 2550416, at *2 (3d Cir. June 28, 2011). Major life activities include: "caring for onself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

At his deposition, Plaintiff testified that, upon his return to work on May 12, 2008, he

11

"felt great," regularly worked more than his physician-recommended thirty-hour work week, and had no restrictions as to standing, walking, sitting, bending, squatting, crawling, kneeling, climbing, balancing, pushing, pulling, handling objects, reaching above his shoulder level, using his fingers, speaking, or hearing.  (Doc. No. 48-4 at 3-5.)  Further, the facts that Plaintiff's physician confirmed that he had a serious health condition and that HGA approved Plaintiff's FMLA leave from February 25, 2008 to May 12, 2008 is irrelevant, since the relevant time frame for determining whether an employee had an impairment is at the time that the adverse employment action was taken.  See Turner, 440 F.3d at 611.  Plaintiff has presented no other evidence indicating that any of his major life activities were substantially limited upon his return to work.  Therefore, Plaintiff has failed to establish that he had a physical impairment substantially limiting one or more major life activities either when he was demoted in September 2008 or terminated in October 2009.

        2.     *Regarded as Disabled*

Even though Plaintiff has not shown that he had an impairment as defined by the ADA, the ADA may still apply if he can prove that Defendants perceived his impairment as substantially limiting his ability to perform a major life activity.  42 U.S.C. § 12102(1)(C).  The Third Circuit has stated:

> For an individual to be "disabled" under the "regarded as" portion of the ADA's definition of disability, the individual must demonstrate either that: (1) despite having no impairment at all, the employer erroneously believes that the plaintiff has an impairment that substantially limits major life activities; or (2) the plaintiff has a nonlimiting impairment that the employer mistakenly believes limits major life activities.

Tice v. Centre Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001).  This analysis focuses "on

the reactions and perceptions of the persons interacting or working with" the plaintiff, not the plaintiff's actual abilities or inabilities. Robinson v. Lockheed Martin Corp., 212 F. App'x 121, 125 (3d Cir. 2007) (quoting Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)). "The mere fact that an employer is aware of an employee's impairment is insufficient to establish that the employee was regarded as disabled or that such perception caused the adverse employment action. In 'regarded as' cases, the employer must perceive the individual as having an actual disability under the ADA." Bialko v. Quaker Oats, No. 3:CV-08-0364, 2010 WL 1330285, at *12 (M.D. Pa. 2010) (internal citation omitted).

Plaintiff argues that his diagnosis and the approval of his FMLA leave from February 25, 2008 until May 12, 2008 by HGA Human Resources is evidence that Defendants regarded him as disabled. (Doc. No. 56 at 6 n.3.) At his deposition, Plaintiff stated that the only reason why anyone might have regarded him as being disabled was because Plaintiff had returned to work on May 12, 2008 after having surgery. (Doc. No. 48-4 at 18.) This fact alone – even when considered along with the facts that Plaintiff had no physical restrictions when he returned to work, often worked more hours than what his physician advised, and never talked to anyone at HGA regarding his health problems – is simply not enough to create a dispute of material fact as to whether Defendants regarded Plaintiff as being disabled at any relevant time.

Because Plaintiff has failed to present a genuine dispute of fact material to the question of whether he had a disability as defined by the ADA, he is unable to establish a prima facie case, and, therefore, Defendants' motion for summary judgment on the ADA claim will be

granted.[3]

### C. FMLA Claims

The FMLA contains two distinct types of rights, which together seek to meet the needs of families and employees while accommodating the legitimate interests of employers. See, e.g., Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998). First, an employee may assert an interference claim under 29 U.S.C. § 2615(a)(1), which provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title." Second, an employee may assert a retaliation claim under § 2615(a)(2), which makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." The Third Circuit has held that terminating an employee for requesting or taking FMLA leave can constitute either interference or retaliation. Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009). Plaintiff alleges claims under both provisions.[4]

*1.  FMLA Interference Claim*

---

[3] Because Plaintiff has failed to present evidence that he had a "disability" as defined by the ADA, his failure to accommodate claim, to the extent he alleged one, also fails. (Doc. No. 1 ¶ 32.)

[4] Relying on this Court's decision in Rigel v. Wilks, No. 1:03-cv-971, 2006 WL 3831384, at *10-13 (M.D. Pa. Dec. 28, 2006), Defendants contend that Plaintiff only pled an interference claim in his complaint. (Doc. No. 49 at 23.9). In Rigel, this Court carefully assessed the plaintiff's complaint and found that his references to retaliation related to his First Amendment union activity or his claim under the Fair Labor Standards Act. Id. at *12. Unlike the plaintiff's complaint in Rigel, in paragraph 52 of the instant complaint, Plaintiff's references to retaliation, discharge, and discrimination clearly relate to his FMLA claims and were sufficient to give Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Therefore, the Court will consider Plaintiff's retaliation claim.

Plaintiff contends that Defendants interfered with his FMLA rights by demoting him shortly after his return from FMLA leave and failing to restore him to his previous position or an alternate position with equivalent salary and benefits.[5] (Doc. No. 56 at 10.) First, the Court notes that Plaintiff was reinstated to his position as District Manager following his return from FMLA leave on May 12, 2008, and that he remained in that position for over four months – until September 26, 2008. Nevertheless, the Court will consider Plaintiff's interference claim because Plaintiff contends that his demotion was the result of his June 20, 2008 performance evaluation, which he argues was unfavorable because, as a result of his taking FMLA leave, Defendants did not provide him with the same review period or evaluation criteria as other District Managers.

To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison v. City of Phila., 430 F.3d 117, 119-20 (3d Cir. 2005). The Third Circuit has further explained that:

> Under this theory, the employee need not show that he was treated differently than others. Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision. An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.

Id. at 119-20. Following a qualified leave, an employee is entitled to return to the same or an alternate position with equivalent pay and benefits. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.100(c). However, the right to reinstatement is not absolute: If an employee is demoted or discharged for a reason not related to his taking FMLA leave, there is no right to reinstatement. Conoshenti, 364 F.3d at 141; see also Moorer v. Baptist Mem'l Health Care Sys., 398 F.3d 469,

---

[5] Plaintiff does not argue that his termination in October 2009 violated the FMLA.

15

488 (6th Cir. 2005) ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."); Strickland v. Water Workers & Sewer Bd., 239 F.3d 1199, 1208 (11th Cir. 2001) ("[I]f an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable."). Accordingly, if "[a]n employer . . . [is] able to show that an employee would not otherwise have been employed at the time reinstatement is requested," an employee will be unable to prevail on his interference claim. 29 C.F.R. § 825.216(a); see also Sarnowski v. Air Brooke Limousine, 510 F.3d 398, 403 (3d Cir. 2007).

Plaintiff has not shown that he is entitled to relief under the FMLA because he has not met his burden of showing that there is a genuine issue of material fact over the reason he was demoted. First, he has not offered evidence contradicting Defendants' business reasons for eliminating the number of District Managers from approximately ninety four to sixty five. (Doc. No. 50 ¶ 79.) In fact, Plaintiff testified that he was aware that Defendants had lost a significant contract well in advance of demotion decisions being made. (Doc. No. 55 ¶¶ 72-73.) In relevant part, Plaintiff testified: "At the time I went on [FMLA leave] I knew that we were losing 40 percent of our business. I knew there was going to be a reduction in staff." (Doc. No. 48-4 at 7.)

Further, Plaintiff has not come forward with any evidence that his taking FMLA leave had any effect on his final June 20, 2008 performance evaluation and, therefore, any effect on the decision to demote him. According to Plaintiff, he received a total score of 3 on the June 20, 2008 evaluation because he was not provided with the same review period or same evaluation criteria as the other District Managers. The record of evidence, however, does not support this

contention. First, the record reflects that Plaintiff's evaluation was issued at the same time as the evaluations of all other employees, including those who had taken leave during the period. (Doc. No. 50 ¶ 61.) In addition, Ms. Tysz and Mr. Kaminsky both stated that, if employees returned from medical leave, their performance evaluations would be based only on the work they performed "during the periods when they were active, working employees." (Id. ¶ 62.) Plaintiff has failed to present evidence disputing that statement or showing that his FMLA leave was discussed or considered by Ms. Tysz and Mr. Kaminsky. Second, the record reflects that Plaintiff was evaluated on different criteria because both he and Defendants felt that result would be most fair. In his brief, Plaintiff repeatedly asserts that Mr. Ashmen unfairly conducted a "surprise audit of two of his stores shortly after he returned from FMLA leave." (Doc. No. 56 at 2, 8, 11.) Plaintiff, however, does not dispute the fact that the results of this audit were not factored into his June 20, 2008 overall performance evaluation score. Plaintiff has failed to demonstrate how the exclusion of the Audit Score from his evaluation negatively affected his overall performance evaluation score or led in any way to his demotion.

In sum, Plaintiff has failed to put forth evidence that his FMLA leave adversely affected his June 20, 2008 performance evaluation or that the decision to demote him was based in any part on his taking leave. Therefore, the Court will grant Defendants' motion with respect to Plaintiff's FMLA interference claim.

### 2. Retaliation Claim

Where there is only indirect evidence of a violation of the FMLA, the Third Circuit has stated that the McDonnell Douglas burden-shifting framework applies to retaliation claims. Coppa v. Am. Soc'y for Testing Materials, 2005 WL 1124180 (E.D. Pa. May 11, 2005). To state

a prima facie case of FMLA retaliation, a plaintiff must "show that (1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." Conoshenti, 364 F.3d at 146 (footnote omitted). If a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. Baltuskonis v. U.S. Airways, Inc., 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999). If the employer meets this burden of production, the plaintiff must present evidence that the employer's proffered reason for the adverse action was a pretext for retaliating against the employee for taking FMLA leave. Id. To defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764-65.

    Assuming arguendo that Plaintiff could establish a prima facie case of FMLA retaliation based on his use of FMLA leave from February through May 2008, followed by his demotion in September 2008, Plaintiff cannot rebut Defendants' legitimate, non-discriminatory reason for demoting him: Defendants lost a significant business contract and Mr. Carpenter received a higher total performance evaluation score than Plaintiff on their respective June 20, 2008 performance evaluations. In an attempt to establish pretext, Plaintiff relies on the fact that Mr. Ashmen conducted a "surprise audit" of two of his stores shortly after he returned from FMLA leave. As discussed, the results of Mr. Ashmen's audit of Plaintiff's stores was ultimately not included in Plaintiff's June 20, 2008 performance evaluation and, therefore, was not considered

by Mr. Blair and Ms. Tysz in making demotion decisions. In addition, Plaintiff argues that Mr. Kaminsky "summarily dismissed" Plaintiff's grievance – his August 4, 2008 email – regarding his June 20, 2008 evaluation in violation of the FMLA. Even construing the August 4, 2008 email as a grievance, the evidence of record does not show, and Plaintiff has not demonstrated how, Mr. Kaminsky's "dismissal" of it violated the FMLA, as Plaintiff has not presented evidence demonstrating that his FMLA leave had any effect on his June 20, 2008 evaluation.[6] In sum, Plaintiff has simply failed to point to evidence that discredits Defendants' legitimate, non-discriminatory reasons for its actions. Accordingly, the Court will grant Defendants' motion as to Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 48) will be granted. An order consistent with this memorandum follows.

---

[6] To support his pretext argument, Plaintiff contends that Bonita Morrison, a District Manager who also took FMLA leave prior to her June 20, 2008 performance evaluation, "experienced an arbitrary evaluation . . ., pursued her grievance, had an opportunity for several conferences and discussions and submissions, and HGA management ultimately gave her an upgraded score on her performance evaluation." (Doc. No. 56 at 9 n.4.) Ms. Morrison was not demoted in September 2008. (Doc. No. 50 ¶ 99.) Plaintiff, however, has failed to present evidence indicating that Ms. Morrison's "arbitrary evaluation" and pursuance of her grievance was related to her taking FMLA leave.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS G. PALMER, | : | |
|     Plaintiff | : | Civil Action No. 1:09-cv-01883 |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| HARVEY GERSTMAN | : | |
| ASSOCIATES, INC., QUEST SERVICE | : | |
| GROUP, LLC, and HGA QUEST, INC., | : | |
|     Defendants | : | |

# **ORDER**

**NOW**, on this 22nd day of December 2011, upon consideration of Defendants' motion for summary judgment (Doc. No. 48), **IT IS HEREBY ORDERED** that Defendants' motion is **GRANTED**.

 

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania